UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Aspen Ford
              Plaintiff,

   - against -

Ford Motor Company                          CV-01-4677 (CPS)
              Defendant.           CV-99-5978 (CPS)

----------------------------------------X   MEMORANDUM
                                                                        OPINION AND ORDER
Universal Ford
              Plaintiff,

   - against -

Ford Motor Company
              Defendant.

----------------------------------------X

SIFTON, Senior Judge.

    Plaintiffs, McCarville Ford, Inc. ("McCarville") and L&B Lincoln-Mercury, Inc. ("L&B")[1], bring this motion, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure[2] and Local

---

[1] This case includes 16 other plaintiffs besides L&B and McCarville: Aspen Ford, Inc., Bright Bay Lincoln Mercury Inc., Hempsted Lincoln-Mercury, Koeppel Ford Inc., McDaniel Ford Inc., Popular Ford Inc., Smithtown Ford Inc., Tower Ford Inc., Dan Buckley Ford Inc., R.C.Lacy, Inc., Patchogue Motors, Inc., Wantagh Ford, Inc., Morningstar Ford, Inc., Johnson Ford Inc., Universal Ford, Inc., and Bill Kolbe Jr. The parties have entered into a stipulation, so-ordered by Magistrate Judge Gold on November 14, 2003, agreeing that L&B and McCarville would serve as "test" plaintiffs. Discovery is stayed as to the other plaintiffs pending resolution of L&B's and McCarville's claims. The parties will be bound by any legal decisions in the L&B and McCarville cases, but to the extent other plaintiffs present different material facts, it has been agreed that the factual findings in this case will not bind those plaintiffs.

[2] While some courts hold that a motion under Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend the judgment can be brought only after a trial, "[m]ost courts, however, including those in this circuit, allow a motion to amend a grant of summary judgment to be brought under Rule 59(e)." *Patel v. Lutheran Med. Cent., Inc.*, 775 F.Supp. 592, 596 (E.D.N.Y. 1991) (citing cases).

Rule 6.3, seeking reconsideration of this Court's decision dated March 28, 2006, granting defendant's motion for summary judgment. Defendant cross-moves for the entry of partial summary judgment and an award of costs and fees. For the reasons set forth below the plaintiffs' motion for reconsideration and defendant's motions for entry of partial summary judgment and costs and fees are denied.

BACKGROUND

The following facts are taken from the submissions of the parties in connection with this motion and this Court's earlier decision, familiarity with which is assumed.

Plaintiffs L&B and McCarville are automobile dealers engaged in the business of selling and servicing Ford automobiles. Defendant Ford is engaged in the business of manufacturing automobiles, including Ford, Lincoln and Mercury model vehicles.

Plaintiffs each operate under Sales and Services Agreements with Ford (the "Agreements") which set forth the respective rights and obligations of Ford and the plaintiffs.

Pursuant to the Agreements, L&B and McCarville provide parts and labor at no cost to customers whose vehicles are repaired under warranty from Ford. The Agreements provide that Ford will reimburse its dealers for warranty work and incorporate by reference Ford's Warranty and Policy Manual (the "Manual"). The Manual sets forth Ford's policies and procedures for the

-3-

submission of claims for warranty work and how dealers are to be reimbursed. The Manual is distributed to Ford, Lincoln, and Mercury dealers nationwide. Both L&B and McCarville have received copies of the Manual.

> Under § 4(1)(b)(1) and § 4(1)(b)(4) of the Agreement:
>
> (1) The Dealer shall perform all warranty and policy service on each COMPANY PRODUCT it is certified to sell and service, presented by owners, in accordance with the warranty and policy applicable thereto and the appropriate provisions of the Warranty Manual and CUSTOMER SERVICE BULLETIN.
>
> ***
>
> (4) The Dealer shall submit claims to the Company for reimbursement for the parts and labor used in performing warranty, policy and campaign work and the Company shall reimburse the Dealer in connection therefor, in accordance with the provisions of the Warranty Manual or campaign instructions and the Dealer's approved Warranty labor rate. The Dealer shall maintain adequate records and documents supporting such claims in accordance with the provisions of the Warranty Manual.

(Peterson Dec. Ex. C. at 6447.)

To be reimbursed for the parts and labor expended on a warranty repair, L&B and McCarville, and other dealers under contract with Ford, currently must submit a claim to Ford within 90 days of the date of the repair.[3] (Barry Dec. Ex. C [2003 Manual].) After reviewing the claim, Ford pays the dealer for parts as specified in the applicable National Warranty Parts

---

[3] 120 days were allowed for claims submitted between October 1, 2002 and September 30, 2003, and 180 days for claims submitted before October 1, 2002. (Barry Dec. Ex A [1998 Manual]), Ex B [2001 Manual].)

Reimbursement Policy (the "National Reimbursement Policy"). The National Reimbursement Policy is distributed annually to Ford dealers nationwide, including L&B and McCarville.

Pursuant to the Manual, to submit a claim for reimbursement, L&B, McCarville, and other dealers nationwide, are required to enter certain information, such as repair order number, part price, and vehicle identification number, into Ford's computerized Direct Warranty Entry System ("DWE"). Once a claim is entered via DWE, Ford's Automated Claims Editing System ("ACES II") reviews it for accuracy and may edit information included in the warranty submission. For example, if a dealer enters a part price that deviates from the price for that part set forth in the National Reimbursement Policy, ACES II overrides the price set forth in the submission and replaces it with the National Reimbursement Policy price.

Ford processes 50,000 to 75,000 warranty claims a day from its dealers nationwide. In the State of New York, Ford receives approximately 2,000 warranty and service contract claims daily. L&B and McCarville routinely submit electronic claims for warranty reimbursements through DWE. 84% of all claims submitted to DWE are paid overnight without review by Ford personnel. Dealers usually get a "register" (essentially an electronic statement of account) the next day indicating that a warranty claim has been paid. If a dealer is dissatisfied with a warranty

payment, it has 120 days to appeal the payment. (Barry Dec. Ex. C [2003 Manual].[4])

In 1992, New York State amended § 465 of its Vehicle and Traffic Law to require motor vehicle manufacturers such as Ford to reimburse both labor and parts under warranty contracts at reasonable market rates.[5] The statute provides in its entirety:

> 1. Every franchisor shall properly fulfill any warranty agreement and/or franchisor's service contract and shall compensate each of its franchised motor vehicle dealers for warranty parts and labor in amounts which reflect fair and reasonable compensation for such work. All warranty claims and/or claims under a franchisor's service contract made by franchised motor vehicle dealers shall be paid within thirty days following their approval provided, however, that the franchisor retains the right to audit such claims for a period of two years following the submission thereof, and to charge back any amounts paid on false, fraudulent, incorrect or unsubstantiated claims. For parts, other than components, systems, fixtures, appliances, furnishings, accessories and features of a house coach that are designed, used and maintained primarily for nonvehicular residential purposes, and labor reimbursement, fair and reasonable compensation shall not be less than the price and rate charged by the franchised motor vehicle dealers in the community or marketing area for like services to non-warranty and/or non-service contract customers, provided such price and rate are reasonable.
>
> 2. All warranty claims shall be either approved or disapproved within thirty days after their receipt. When any such claim is disapproved the franchised motor vehicle dealer shall be notified in writing of its disapproval within said period. Each such notice shall

---

[4] The DWE system allows the dealer to file an electronic "appeal" requesting additional reimbursement. In contrast to regular claims filed in the DWE system, appeals are reviewed in person at Ford, not electronically.

[5] The prior version of § 465 applied to labor but not parts.

> state the specific grounds upon which the disapproval is based.

N.Y. Veh. & Traf. Law § 465 (McKinney's 1996).

To comply with the 1992 amendment to §465, Ford promulgated a Supplemental Reimbursement Policy ("Supplemental Policy") applicable to franchised dealers located in New York State to permit the dealers to submit claims for warranty reimbursement at prices higher than those set forth in the National Reimbursement Policy. Under the Supplemental Policy, a dealer seeking reimbursement at prices higher than those permitted by the National Reimbursement Policy must submit a claim that references the particular warranty repair performed, state the rate the dealer charges its non-warranty customers for any part used in the repair, substantiate that rate by including five[6] non-warranty, customer-paid orders for the part or a similar part, state the dealer's parts markup, and identify non-Ford franchised dealers in the dealer's community or marketing area. If a dealer submits a claim in conformity with these requirements, Ford determines whether the price requested by the dealer is reasonable and, if it is, reimburses the dealer for the amount requested.

Despite the fact that L&B and McCarville both learned of Ford's Supplemental Policy procedure prior to the commencement of

---

[6] If a dealer cannot find five sales orders for similar parts the dealer may submit a supplemental claim with fewer sales orders. (Rubin. Decl. Ex. 14, Ex. 15.)

this litigation (Rule 56.1 ¶27, 34, 44-49), neither L&B or McCarville has ever submitted a claim under the Supplemental Prolicy. (Rule 56.1 ¶26.) L&B and McCarville are both members of two car dealer associations, the Greater New York Automobile Dealers Association ("GNYADA") and the New York State Automobile Dealers Associations ("NYSADA"). Both associations were involved in lobbying for the 1992 amendment to § 465, and the NYSADA publicized the amendment to its members when it was enacted. L&B regularly receives newsletters from the two associations, and L&B's president generally reviews newsletters when they are received. Since 1992, these newsletters have apprised dealers of their rights under § 465. A NYSADA newsletter dated May 31, 2000, specifically described Ford's Supplemental Procedure. In addition, McCarville's president, Bart McCarville, was a member of the NYSADA's executive committee that helped draft the proposed 1992 amendments and knew that § 465 was amended to address warranty parts reimbursement.

From the amendment of § 465 in 1992 until 2001 neither dealer notified Ford that they were dissatisfied with amounts of reimbursement for parts under their warranty claims. McCarville's president stated that he did not complain because he "did not want to go out on a limb" or "to shake the tree" by asking for additional amounts, stating "I have been a . . . Ford dealer for almost 50 years and one reason that I'm still a Ford

dealer today is that I have learned not to make too many waves."
(McCarville Dep. 129-130.)

By letter dated August 21, 2001, L&B first informed Ford of its dissatisfaction with the supplemental reimbursement policy and asked Ford to reimburse L&B in compliance with the mandates of § 465. L&B stated that it objected to Ford's supplemental reimbursement policy because the policy
"places the burden on L&B to particularize claims and submit detailed evidence of the non-warranty retail price for each part in question charged by franchised motor vehicle dealers in L&B's community."[7] L&B also stated:

> Notwithstanding the foregoing, we wish to emphasize that no waiver, accord or satisfaction may be inferred from L&B's past or future resort to Ford's claims submission process as it is presently constituted, nor the past or future acceptance of payments under protest thereunder.

On July 12, 2001, L&B filed suit against Ford. On August 2, 2002, McCarville joined the suit.

Ford subsequently moved for summary judgment on six grounds, arguing that (1) plaintiffs could not prove a *prima facie* case under N.Y. Veh. & Traf. Law § 465; (2) plaintiffs had not and could not establish any breach of contract by Ford; (3) plaintiffs' claims for additional warranty reimbursement are barred by doctrines of waiver, estoppel and account stated; (4)

---

[7] In fact, as noted below, such evidence is only required with respect to the dealer's own price, not with respect to the dealer's competitors.

McCarville's claims were barred because § 465 was enacted after McCarville's agreement with Ford was signed; (5) McCarville's claims for damages prior to August 1999 were barred by the statute of limitations; and (6) there was no legal or factual support for plaintiffs' claims for punitive damages or injunctive relief.  In a Memorandum Order and Opinion dated March 28, 2006, I granted Ford summary judgment on the ground that a dealer must, under its contract with Ford and § 465, provide evidence of its own pricing to a manufacturer before it is entitled to a higher rate of reimbursement.

Presently before the Court is plaintiffs' motion for reconsideration of my March 28, 2006 Memorandum Opinion and Order granting defendant's motion for summary judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.  For the reasons stated below, the motion is denied.

DISCUSSION

Standard for Motion for Reconsideration

A motion for reconsideration pursuant to either Rule 59(e) of the Federal Rules of Civil Procedure or Local Rule 6.3 will be granted if the moving party presents factual matters or controlling decisions the court overlooked that might materially

have influenced its decision[8]. *Pereira v. Aetna Casualty and Surety Co. (In re Payroll Express Corp.)*, 921 F.Supp. 1121, 1123 (S.D.N.Y. 1996); *Violette v. Armonk Assocs., L.P.*, 823 F.Supp. 224, 226 (S.D.N.Y. 1993). Reconsideration is also appropriate if there is an intervening change of controlling law, new evidence, or the need to correct a clear error or prevent manifest injustice. *Doe v. New York City Dep't of Social Servs.*, 709 F.2d 782, 789 (2d Cir. 1983); *Casino, LLC v. M/V Royal Empress*, No. 98-CV-2333, 1998 WL 566772, at *1 (E.D.N.Y. Aug. 21, 1998).

Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered. *See Caleb & Co. v. E.I. Du Pont De Nemours & Co.*, 624 F.Supp. 747, 748 (S.D.N.Y. 1985). In deciding a Local Rule 6.3 motion, the court will not allow a party to use the motion as a substitute for an appeal from a final judgment. *See Morser v. A.T. & T. Information Systems*, 715 F.Supp. 516, 517 (S.D.N.Y. 1989); *Korwek v. Hunt*, 649 F.Supp. 1547, 1548 (S.D.N.Y.

---

[8] Essentially the same standard is used to determine Rule 59(e) motions as motions under the Local Rule. Rule 59(e) "does not prescribe specific grounds for granting a motion to alter or amend an otherwise final judgment," *Munafo v. Metropolitan Transp. Authority*, 381 F.3d 99, 105 (2d Cir. 2004), and "district courts may alter or amend a judgment to correct a clear error of law or prevent manifest injustice." *Id.* (internal citations and quotations omitted); *see also Wood v. F.B.I.*, 432 F.3d 78, 85 n.4 (2d Cir. 2005) (affirming denial of Rule 59(e) motion where "district court did not commit error or a manifest injustice"). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

1986). Accordingly, a party in its motion for reconsideration "may not advance new facts, issues or arguments not previously presented to the court." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, No. 86-CV-6447, 1989 WL 162315, at *3 (S.D.N.Y. Aug. 4, 1989).

Plaintiffs' Motion for Reconsideration

Plaintiffs proffer two theories for the Court's reconsideration. The first is that plaintiffs relied on this Court's earlier decision in this action reported as *Universal Ford v. Ford Motor Company*, 2001 WL 1502994, (E.D.N.Y. Oct. 31, 2001), and should not be barred from submitting claims for supplemental reimbursement in the trial of this action[9]. As a second ground for reconsideration, the plaintiffs argue that the Court incorrectly determined that they were aware of Ford's Supplemental Policy prior to May 31, 2000, the date of the NYSDA newsletter.

Neither argument warrants reconsideration of defendant's motion.

The decision in *Universal Ford*, supra, is distinguishable. The evidence submitted on the motions for summary judgment in that case failed to establish that Ford was entitled to judgment

---

[9]The decision in *Universal Ford* denied defendant Ford's summary judgment motion and stated "Universal (a dealer) may meet its burden [of proving what prices apply under § 465 of N.Y. Veh. & Traf. Law] at trial, and its failure to meet that burden prior to trial is immaterial." 2001 WL 1502994, at *7.

since there remained genuine issues of fact as to whether it had complied with § 465's mandate in establishing a policy in compliance with § 465 and distributing it to dealers. On this motion, it is beyond dispute that Ford has established and distributed to dealers a policy which places the burden of presenting Ford with the dealer's own prices on non-warranty claims prior to commencing a law suit on the dealer.

<u>Defendant's Motion for Entry of Judgment</u>

*Rule 54(b) of the Federal Rules of Civil Procedure*

In an action with multiple claims or multiple parties, Rule 54(b) of the Federal Rules of Civil Procedure allows a court the flexibility to direct the entry of final judgment as to one or more claims or parties prior to the resolution of all claims, upon the express determination by the court that there is no just reason for delay. Once certified under Rule 54(b), the parties to the action may seek an immediate appeal without waiting for the remaining issues in the case to be decided.

The rule requires that "(1) multiple *claims* or multiple *parties* must be present, (2) at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make 'an express determination that there is no just reason for delay' and expressly direct the clerk to enter judgment." *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085,

1091 (2d Cir. 1992) (emphasis in original); *see also Information Resources Inc. v. The Dun and Bradstreet Corp.*, 294 F.3d 447, 451 (2d Cir. 2002).

"[H]istoric federal policy [disfavors] piecemeal appeals," *Curtiss-Wright Corp. v. General Electric Corp.*, 446 U.S. 1, 10 (1980)(quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956)). "In determining whether to grant partial judgment, a court should consider the relationship between the adjudicated and unadjudicated claims." *Siderpali, S.P.A. v. Judal Industries, Inc.*, 833 F.Supp. 1023 (S.D.N.Y. 1993) (citing *Gaetano Marzotto & Figli, S. P. A. v. G. A. Vedovi & Co.*, 28 F.R.D. 320, 324 (S.D.N.Y. 1961)). Claims are inappropriate for certification under Rule 54(b) if they are "inherently inseparable" from each other or "inextricably interrelated." *Ginett*, 962 F.2d at 1096 (internal quotations omitted). Here, the claims of the other plaintiffs are inseparable and an immediate appeal will lead to piecemeal appeals. Accordingly, entry of judgment under Rule 54(b) must be denied.

Defendant's Motion for Costs and Attorney Fees

N.Y. Veh. & Traf. Law § 469 states that "[a] franchised motor vehicle dealer who is aggrieved by a violation of this article shall be entitled to sue for, and have ... damages ... the court may award necessary costs and disbursement plus a reasonable attorney's fee to any party." This section allows a

court to use discretion in awarding attorney's fees and costs to a prevailing party. A party is a prevailing party where the court has rendered judgment in its favor or where the court has materially changed the legal relationship of the parties. *Buckhannon Bd. And Care Home, Inc. v. West Virginia Dept. of Health and Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d. 855 (2001).

Rule 54(d) allows a prevailing party to make claims for attorney's fees and other costs up to 14 days after entry of a "judgment." *See* Fed.R.Civ.P. 54(d)(2)(B). Rule 54 deals generally with judgments, which are defined as a "decree and any order from which an appeal lies." *See* Fed.R.Civ.P. 54(a); *10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2652* (2d ed. 1983) ("judgment" means only final judgments and appealable interlocutory orders).

In the present case, there has been no final judgment. A decision is considered final when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)); *see also Ginett*, 962 F.2d at 1092; *Information Resources,* 294 F.3d at 452 (noting that non-final rulings include those orders granting or denying summary judgment that only partially adjudicate a claim, orders dismissing only a portion of a claim or situations

where the "exact contours of the . . . ruling are not discernable"). My Memorandum Order and Opinion dated March 28, 2006, granted Ford partial summary judgment. An order granting partial summary judgment is not a final order. *In re Chateaugay Corp.*, 922 F.2d 86 (2d Cir. 1990) (an order granting partial summary judgment is interlocutory order which does not become final until court determines that there is no just reason for delay and expressly directs entry of final judgment). There having been no final judgment, and hence no prevailing party, costs and fees cannot be awarded.

CONCLUSION

For the reasons set forth above, plaintiffs' motion for reconsideration is denied and defendant's motions for entry of partial summary judgment and costs and fees are denied.

The clerk is directed to transmit a copy of the within to all parties and to the Magistrate Judge.

SO ORDERED.

Dated :   Brooklyn, New York

March 12, 2007

`

By: /s/ Charles P. Sifton (electronically signed)

United States District Judge